IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JESSICA MIRARCHI
1212 Scott Street
Kulpmont, PA 17834

      Plaintiff,

v.

GEISINGER
d/b/a GEISINGER MEDICAL CENTER
100 N. Academy Avenue
Danville, PA 17822

      Defendant.

Civil Action No. : _____

**JURY TRIAL DEMANDED**

---

# COMPLAINT – CIVIL ACTION

Plaintiff, Jessica Mirarchi ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Geisinger d/b/a Geisinger Medical Center ("Defendant"), alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action to redress violations by the Defendant of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.,* which have caused Plaintiff to suffer damages as set forth herein.

## PARTIES

2. Plaintiff Jessica Mirarchi is a citizen of the United States and Pennsylvania, who currently maintains a residence at 1212 Scott Street, Kulpmont, PA 17834.

3. Upon information and belief, Defendant Geisinger d/b/a Geisinger Medical Center, is a for-profit company duly organized and existing under the laws of the Commonwealth of Pennsylvania and maintains a principal place of business located at 100 N. Academy Avenue, Danville, PA 17822.

## JURISDICTION AND VENUE

4. On or about September 10, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), and 43 P.S. § 959(a). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2024-09732. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

5. By correspondence dated September 5, 2025, Plaintiff received a Notice of Rights to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

6. Plaintiff filed the instant action within the statutory time frame applicable to her claims.

7. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

8. This is an action authorized and instituted pursuant to the ADA and Title VII.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367, as those claims arise out of the same common nucleus of operative facts as her federal claims.

11. The venue in this district is proper to 28 U.S.C. § 1391, as the parties reside in this judicial district, doing business herein, and the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. By way of background, in or around November 2022, Plaintiff began her employment with Defendant in the position of Personal Care Unit Assistant, though her title changed to Personal Care Aide.

14. When Plaintiff's title changed, her responsibilities remained the same.

15. By further way of background, on or about May 4, 2024, a patient of Defendant (hereinafter, "Patient X") attacked one of Defendant's Registered Nurses ("RN") to such a degree that Defendant's RN required a call for rapid response for emergency treatment within Defendant.

16. Because of this, Patient X was placed in seclusion.

17. When a patient is in seclusion, they require a 1:1, which means they are assigned a staff member to sit with them.

18. The staff member is not in the patient's room, but in the hallway outside of the patient's room.

19. The patient and the staff member can see each other because the patient's room has windows and a door with a window.

20. The purpose of the room is to ensure the patient is always within the staff member's view.

21. This results in the staff member being completely within the patient's eyesight for their entire shift.

22. On or about May 6, 2024, Plaintiff was assigned to Patient X.

23. Despite the severe attack Patient X had just committed on one of Defendant's RNs, Defendant did not assign any security personnel to Patient X, resulting in Plaintiff being left alone at her post.

24. For reference, as a Unit Desk Clerk, Plaintiff's station was in the hallway outside of Patient X's room, directly in his line of sight by way of a glass door and/or windows in his room.

25. It should be noted that the nurse's notes for Patient X were that he was hyper-sexual.

26. Plaintiff had previously disclosed to her supervisor and Defendant's Charge Nurse, Diane Long ("Nurse Long"), that she had a history of being violently raped when she was a teenager.

27. Plaintiff notified Nurse Long that she was uncomfortable being assigned to Patient X, but Plaintiff was ignored.

28. On the night of May 6, 2024, at the start of Plaintiff's assignment to sit with Patient X, he began making inappropriate comments.

29. In addition, Patient X began masturbating.

30. Typically, this would not affect Plaintiff because this is something that happens frequently with patients within Defendant's psychiatric impatient unit, which is where Plaintiff often worked.

31. However, Patient X specifically affected Plaintiff because on May 6, 2024, he would come to the window of his room and speak directly to Plaintiff while staring and masturbating.

32. Plaintiff had nowhere to go as she could not leave her post.

33. Patient X's actions were clearly sexual and hostile and directed towards Plaintiff because she is a woman.

34. At 11:30 PM on May 6, 2024, Nurse Long was doing her rounds.

35. Plaintiff told Nurse Long that she was having a panic attack because at the time, Plaintiff was.

36. Plaintiff is familiar with the signs of a panic attack because she had experienced them before due to the experiences she had endured in her past.

37. However, Nurse Long did not care.

38. In fact, Nurse Long became overly frustrated with Plaintiff and left her with Patient X rather than provide Plaintiff with any assistance.

39. Panic attacks constitute a disability within the meaning of the ADA and PHRA in that they severely limit one or more major life activities for an extended period.

40. At midnight, Nurse Long returned to give Patient X a snack.

41. Nurse Long did not have a security guard with her despite knowing that Patient X was in seclusion because of his violent attack on one of Defendant's RNs just a few days prior, on May 4, 2024.

42. Plaintiff expressed her concern to Nurse Long about this and Nurse Long snapped at Plaintiff in response.

43. As soon as Nurse Long started opening the door, Patient X attacked Nurse Long and Plaintiff.

44. Nurse Long and Plaintiff tried to stop Patient X, to no avail.

45. Nurse Long and Plaintiff tried to close the door as Patient X attempted to force his way out, but Patient X succeeded in getting out.

46. Patient X got to Nurse Long first and hit her a few times before heading towards Plaintiff.

47. Upon Patient X's first strike to Nurse Long, Plaintiff hit her panic button but it was too late.

48. Patient X punched Plaintiff in the chest and she flew into the wall, then slid onto the floor.

49. Plaintiff did not know how long it took for security to arrive but she believes it was at least five minutes.

50. Plaintiff later learned that no security had been on Plaintiff's side of the building.

51. Plaintiff also learned later that another RN, Brenda Peachy ("Nurse Peachy") was simply sitting there, watching everything on the live-stream rather than calling for additional assistance.

52. Previously, Plaintiff had reported Nurse Peachy as a liability to management because she had left Plaintiff cornered in the bathroom with an aggressive dementia patient.

53. Defendant ignored Plaintiff's report and this time, Nurse Peachy's lack of attention proved to have severe consequences.

54. Following the attack, Plaintiff went to the emergency department within Defendant because there was blood in her urine.

55. Plaintiff told the doctors that she had a kidney problem.

56. Plaintiff suffers from a kidney disease, which Defendant was aware of due to Plaintiff's previous use of intermittent FMLA.

57. However, Defendant had often disregarded Plaintiff's kidney disease, which qualifies as a disability under both the ADA and PHRA.

58. Plaintiff had informed Defendant of her need for bathroom breaks during a 1:1 shift.

59. Because of Plaintiff's kidney disease, Plaintiff needs the opportunity to go to the bathroom and to be able to drink water and stay hydrated.

60. During the course of Plaintiff's employment, Plaintiff was rarely given that opportunity.

61. The morning of May 7, 2024, after the attack, Plaintiff was discharged from the emergency department and sent back to her shift.

62. Specifically, Plaintiff was told to return to her post with Patient X.

63. Upon Plaintiff's return to her shift, Plaintiff told Nurse Long and both of Defendant's house supervisors on shift that she was experiencing a lot of kidney pain and that she was physically uncomfortable, but Plaintiff was ignored.

64. Specifically, Plaintiff spoke with Kim Llanso ("Ms. Llanso") and Michelle Wegemer ("Ms. Wegemer"), Defendant's HR representatives.

65. When visiting her primary care physician the following day, Plaintiff was told her kidneys were swollen, resulting in an exacerbation to the pain and discomfort associated with Plaintiff's disability.

66. As a result, Plaintiff was taken out of work by her doctor for a brief medical leave of absence beginning on or about May 8, 2024.

67. Subsequent to events and circumstances surrounding the May 6, 2024, assault by Patient X, Defendant began blaming Plaintiff for the attack.

68. Due to no longer being able to endure the sufficiently hostile work environment, which any reasonable person would find abusive and offensive,

Plaintiff was constructively discharged from employment on or about May 7, 2024, with Plaintiff's last day scheduled for May 19, 2024.

69. Based on the foregoing, it is believed, and therefore averred, that Plaintiff was constructively discharged from employment with Defendant because of her sex, for the sufficiently severe and/or pervasive sexual harassment to which she was subjected, and in retaliation for her reports of sexual harassment and a hostile work environment in connection thereto, in violation of Title VII and the PHRA.

70. It is further believed, and therefore averred, that Plaintiff was constructively discharged from employment with Defendant because of her actual and/or perceived disabilities, for her past record of impairment, because Defendant regarded her as being disabled, and in retaliation for her request(s) for a reasonable accommodation in connection thereto, in violation of the ADA and the PHRA.

71. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

# COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION

72. Paragraphs 1 through 71 are hereby incorporated by reference as though the same were fully set forth at length herein.

73. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

74. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disability/disabilities.

75. Plaintiff's panic attacks and kidney disease constitute disabilities within the meaning of the ADA in that they substantially impair her ability to engage in one or more major life activities.

76. Despite her disabilities, Plaintiff would have been able to perform the essential function of her job with or without a reasonable accommodation.

77. By reasons of the foregoing, Defendant, through its agents, officers, servants and/or employees, has violated the ADA by terminating Plaintiff's employment on the basis of her actual and/or perceived disabilities, because Defendant regarded her as being disabled, and for her past record of impairment.

78. Additionally, Defendant, through its agents, officers, servants and/or employees, has violated the ADA by constructively discharging Plaintiff in retaliation for her request for a reasonable accommodation in connection thereto.

79. Additionally, Defendant, through its agents, officers, servants and/or employees, has violated the ADA by failing to engage in the interactive process to determine a reasonable accommodation and by failing to accommodate Plaintiff upon learning of Plaintiff's request(s) and/or need for accommodation(s).

80. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

   A. Back wages, front pay, and bonuses in an amount to be determined at trial;

   B. Punitive and/or compensatory damages in an amount to be determined at trial;

C.  Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.  Pre-judgment interest in an appropriate amount; and

E.  Such other and further relief as is just and equitable under the circumstances.

F.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C § 2000e, *et seq.*
## SEXUAL HARASSMENT, SEX DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION

81. Paragraphs 1 through 80 are hereby incorporated by reference as though the same were fully set forth at length herein.

82. At all times material hereto, Defendant employed at least fifteen (15) employees at its various locations at all times relevant hereto.

83. Plaintiff is a woman and as such is a member of a class protected under Title VII from unlawful discrimination because of sex.

84. Defendant took tangible employment action against Plaintiff in the form of constructive discharge from employment because of Plaintiff's sex, in violation of Title VII.

85. Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of her sex in violation of Title VII.

86. Defendant undertook tangible employment action against Plaintiff, in the form of constructive discharge from employment, because she reported sexual harassment, and complained of the hostile work environment.

87. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

88. Because of Defendant's unlawful acts, Plaintiff suffered damages of, among other things, loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

89. As a result of Defendant's deliberate, unlawful, wanton, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against

Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

    A.    Back wages, front pay, and compensatory damages in an amount to be determined at trial;

    B.    Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

    C.    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

    D.    Pre-judgment interest in an appropriate amount; and

    E.    Such other and further relief as is just and equitable under the circumstances.

    F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

# COUNT III
## THE PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *ET SEQ.*
## DISCRIMINATION, RETALIATION, AND FAILURE TO ACCOMMODATE

90. Paragraphs 1 through 89 are hereby are hereby incorporated by reference as though the same were fully set forth at length herein.

91. The conduct described above constitutes a violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

    A.    Back wages, front pay, and bonuses in an amount to be determined at trial;

    B.    Compensatory damages in an amount to be determined at trial;

    C.    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

    D.    Pre-judgment interest in an appropriate amount; and

  E. Such other and further relief as the Court deems just and equitable under the circumstances.

**COUNT IV**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951,** *et seq.*
**SEX DISCRIMINATION/SEXUAL HARASSMENT**
<u>**HOSTILE WORK ENVIRONMENT & RETALIATION**</u>

92. Paragraphs 1 through 91 are hereby incorporated by reference as though the same were fully set forth at length herein.

93. The conduct described above constitutes a violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

  A. Back wages, front pay, and bonuses in an amount to be determined at trial;

  B. Compensatory damages in an amount to be determined at trial;

  C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

    D.    Pre-judgment interest in an appropriate amount; and

    E.    Such other and further relief as the Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:   /s/ *Mary Kramer*
Mary Kramer, Esq.
Michael Murphy, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
mkramer@phillyemploymentlawyer.com
murphy@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: September 17, 2025

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.